[Cite as *State v. Duncan*, 2013-Ohio-5746.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99665**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LARRY DUNCAN

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-564718

**BEFORE:** E.T. Gallagher, J., Stewart, A.J., and Keough, J.

**RELEASED AND JOURNALIZED:** December 26, 2013

**ATTORNEY FOR APPELLANT**

Michael F. Westerhaus
14255 Peppercreek Drive
Strongsville, Ohio 44136


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Andrew Rogalski
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Defendant-appellant, Larry Duncan ("Duncan"), appeals his convictions. We find no merit to the appeal and affirm.

{¶2} Duncan was charged with burglary, a second-degree felony. He was also charged with theft and criminal damaging, which are misdemeanors. Two of the victims, Oleg Adamiuk ("Oleg") and Ella Adamiuk ("Ella"), who testified at trial, lived with their parents and siblings in Parma, Ohio at the time of the burglary. Oleg returned home from work at 4:30 p.m. and discovered Duncan inside the house holding Ella's jewelry box. He thought Duncan might be his sister's acquaintance, but when Duncan asked, "Where is your mother?" Oleg thought this was an odd question and instinctively knew Duncan was not a family friend.

{¶3} Duncan walked toward Oleg and stood, face to face, approximately four feet apart. Oleg observed Duncan's forehead dripping with sweat and noticed that he had a tattoo on his neck. He was wearing a white shirt and jeans shorts and was taller than Oleg, who is 6'1". Oleg ran to the kitchen to grab a knife with which to defend himself but abandoned the idea because he heard Duncan breaking through the front door to escape.

{¶4} Oleg chased Duncan down the street while calling 911 on his cell phone and followed Duncan to a neighboring house on the next street over. While describing the location to the dispatcher, Oleg observed Duncan enter the house through the back door. He watched the house until police arrived five minutes later and did not see Duncan exit the house.

{¶5} Officers Thomas O'Grady ("O'Grady") and John Galinas ("Galinas") testified that they entered the house to apprehend the suspect. They found him hiding behind a dresser in a bedroom. Officer O'Grady testified that Duncan was a tall, skinny male wearing jeans shorts and tennis shoes. Officer Galinas testified that Duncan was wearing a white shirt and had a tattoo on his neck. He also stated that Duncan was "in a full body sweat, like he had just ran a marathon." The officers arrested Duncan and took him into custody. Outside the house, Oleg identified the suspect as the same individual he had found in his home a few minutes earlier.

{¶6} The jury found Duncan guilty of all charges. The court sentenced him to four years in prison for burglary to be served concurrently with the two misdemeanor convictions. Duncan now appeals and raises two assignments of error, which we discuss together because they are interrelated.

{¶7} In the first assignment of error, Duncan argues he was denied his constitutional right to the effective assistance of counsel. He contends his trial counsel was deficient because she raised a defense in opening statement and failed to call Duncan, or any other witnesses, to support the defense. In the second assignment of error, Duncan argues his trial counsel's failure to call him to testify in his own defense violated his constitutional right to due process.

{¶8} To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different. *Strickland v.*

*Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶9} In making this analysis we presume that a properly licensed attorney is competent. *State v. Hamblin*, 37 Ohio St.3d 153, 155-156, 524 N.E.2d 476 (1988). Thus, in determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance is highly deferential. *Bradley* at 142.

{¶10} Further, a defendant is not deprived of the effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988). It is generally presumed that failing to call witnesses is a tactical, trial strategy and does not necessarily constitute ineffective assistance of counsel. *State v. Coulter*, 75 Ohio App.3d 219, 230, 598 N.E.2d 1324 (12th Dist.1992); *State v. Hunt*, 20 Ohio App.3d 310, 312, 486 N.E.2d 108 (9th Dist.1984), citing *O'Malley v. United States*, 285 F.2d 733 (6th Cir.1961).

{¶11} In her opening statement, defense counsel represented to the jury that this was a case of mistaken identity. She indicated the evidence would show that Duncan was in the wrong place at the wrong time, and that he approached the Adamiuks' front door to solicit work when the burglar happened to be fleeing from the house. She suggested that Oleg chased Duncan instead of the burglar. Duncan now argues that counsel deprived him of his right to due process because she failed to call him as a witness to present his version of the case.

**{¶12}** "A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel." *United States v. Webber*, 208 F.3d 545, 550-551 (6th Cir.2000). However, a defendant waives his right to testify in his own defense unless a defendant notifies the trial court of his desire to testify. *State v. Huber*, 8th Dist. Cuyahoga No. 98128, 2013-Ohio-97, ¶ 9-11. This is so because the defendant's attorney is presumed to have properly advocated the defendant's cause and advised the defendant of all of his rights prior to trial. *Strickland v. Washington*, 466 U.S. 668, 688-690, 104 S.Ct. 2052. Therefore,

> [b]arring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record.

*Webber* at 551.

**{¶13}** Duncan argues he alerted the court to a disagreement he had with his trial counsel when he filed a pro se motion to dismiss his attorney and the court held a hearing on the motion prior to trial. Duncan informed the court that he was dissatisfied with his lawyer because she failed to file a motion to suppress and a motion to reduce the bond as he requested. However, the trial court indicated there was no basis for a motion to suppress in this case and, based on Duncan's criminal history and the pending second-degree felony, the motion to reduce bond would have been denied. Duncan never complained that his lawyer advised him to remain silent.

{¶14} Trial counsel indicated, and Duncan agreed, that they met on three separate occasions. According to Duncan, counsel "went over the case" at the first visit, and he decided to go to trial at the second visit. At the third visit, counsel advised Duncan that the prosecutor made a plea offer that was "not a good plea offer," and asked him if he was ready for trial. Trial counsel explained to the court that "what really upset Mr. Duncan is that our defense wasn't as strong as it could have been."

{¶15} Duncan was also evaluated for competency to stand trial and was found competent. Therefore, Duncan must have shown "the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). Indeed, Duncan demonstrated his competence by filing the pro se motion to dismiss his attorney. He was therefore capable of informing the court that his counsel was refusing to call him as a witness against his wishes, but he did not. There is nothing in the record to indicate that his decision to not testify was anything other than a tactical decision given the circumstances of the case.

{¶16} However, even if we assume counsel's failure to call Duncan to testify was deficient, Duncan fails to demonstrate prejudice. A defendant fails to show prejudice when strong evidence of guilt was presented and counsel's alleged errors did not change the trial's result. *State v. White*, 82 Ohio St.3d 16, 24, 1998-Ohio-363, 693 N.E.2d 772, citing *Bradley,* 42 Ohio St.3d 136, at paragraph three of the syllabus.

{¶17} Oleg testified that he saw Duncan face to face and observed distinguishing features, including a tattoo on his neck, the clothes he was wearing, and the fact that he was

dripping with sweat. Oleg never lost sight of Duncan as he chased him from his house to the house on the next street over where police arrested him. Oleg identified Duncan upon his arrest as the suspect he had seen in his house just a few minutes before. Galinas's testimony that Duncan was "in a full body sweat, like he had just ran a marathon" corroborated Oleg's testimony.

{¶18} Defense counsel cross-examined these witnesses and a state forensic scientist even admitted that Duncan's fingerprints were not found at the crime scene. Nevertheless, the jury found the witnesses' testimony credible and the defendant guilty. Duncan fails to show how he would have more likely than not been acquitted if he had testified in his own defense and therefore fails to demonstrate prejudice.

{¶19} Accordingly, we overrule the first and second assignments of error.

{¶20} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, JUDGE

MELODY J. STEWART, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR